UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES L. ORRINGTON, II and JAMES L. ORRINGTON, II D.D.S., P.C., <br><br> Plaintiffs, <br> v. <br><br> HUMANADENTAL INSURANCE COMPANY and HUMANA INC., <br><br> Defendants. | Civil Action No. _____ <br><br> JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiffs James L. Orrington, II ("Dr. Orrington"), and James L. Orrington, II D.D.S., P.C., d/b/a Chatham Dental Care, ("Chatham Dental Care" or "CDC"),[1] by and through their undersigned counsel, hereby file this Complaint against HumanaDental Insurance Company ("HDIC") and Humana Inc.[2] (collectively, "Defendants"). In support thereof, Orrington states as follows:

## PARTIES

1. Plaintiff Dr. Orrington is an individual who is a United States citizen. Dr. Orrington resides in Flossmoor, Illinois, a village located within Cook County, Illinois.

---

[1] Dr. Orrington and Chatham Dental Care are referred to herein collectively at times as "Orrington" or "Plaintiffs."

[2] HDIC and Humana Inc. are referred to herein collectively at times as "Defendants" or "Humana."

2. Plaintiff Chatham Dental Care (legal name, James L. Orrington, II D.D.S., P.C.) is a corporation organized and existing under the law of the State of Illinois with a principal place of business located at 7931 South King Drive, Chicago, Illinois 60619.

3. Upon information and belief, defendant HDIC is a corporation organized and existing under the laws of the State of Wisconsin with a principal place of business located at 1100 Employers Boulevard, De Pere, Wisconsin 54115.

4. Upon information and belief, defendant Humana Inc. is a corporation organized and existing under the laws of the State of Delaware with a principal place of business located at 500 West Main Street Louisville, Kentucky 40202.

## JURISDICTION AND VENUE

5. Personal jurisdiction exists in Illinois over each of HDIC and Humana.

6. HDIC and Humana each have sufficient minimum contacts with the State of Illinois by virtue of the systematic, regular, and substantial business activities they carry out throughout the State of Illinois.

7. Upon information and belief, HDIC and Humana each regularly market their dental insurance products and services to residents of Illinois and also regularly enter into contracts for the providing of dental insurance to insureds residing in Illinois.

8. This action arises out of dealings between Defendants and Chatham Dental Care, an Illinois corporation with its principal place of business in Illinois, related to CDC's treatment of patients in Chicago, Illinois. Further, the action arises out of Defendants' communications with the Illinois Department of Professional and Financial Regulation ("IDPFR"), the pertinent division of which, the Division of Professional Regulation, is located in Chicago, Illinois.

9. Consistent with above, venue is proper in this Judicial District because "a substantial part of the events or omissions giving rise to [Orrington's] claim[s] occurred" in this Judicial District. 28 U.S.C. § 1391(b).

## CHOICE OF LAW

10. In diversity cases, the forum state's choice of law principles apply. *See Casio, Inc. v. S.M. & R. Co.*, 755 F.2d 528, 530-31 (7th Cir. 1985).

11. This Complaint will allege violations of the torts of defamation, commercial disparagement, abuse of process, and intentional infliction of emotional distress (asserted by Dr. Orrington only) under Illinois law. This is because "[w]hen conducting a choice-of-law analysis in tort cases, Illinois has adopted the approach found in the Restatement (Second) of Conflict of Laws, which provides that the rights and liabilities for a particular issue should be governed by the jurisdiction with the most significant relationship to the occurrence and the parties." *Barbara's Sales, Inc. v. Intel Corp.*, 227 Ill.2d 45, 61, 316 Ill.Dec. 522, 879 N.E. 2d 910 (2007).

12. Here, Illinois has the most significant relationship to the occurrence and to the Parties because it is Dr. Orrington and Chatham Dental Care who have sustained injury due to Defendants' tortious conduct; and Dr. Orrington and Chatham Dental Care both reside in Illinois. Further, the tortious statements that are at issue were made to IDPFR, which is located in Illinois. *Raube v. Am. Airlines, Inc.*, 539 F. Supp. 2d 1028, 1033 (N.D. Ill. 2008) (under Illinois choice-of-law principals, the state whose substantive laws are applicable in a tort action are generally those where the injury has been sustained); *see also Bd. of Forensic Document Examiners, Inc. v. Am. Bar Assoc.*, 922 F.3d 827, 831 (7th Cir. 2019) ("In defamation cases, the plaintiff's home state often has the 'most significant relationship' because the location is where the plaintiff suffers the most reputational harm.").

**FACTUAL ALLEGATIONS**

13. In August, 2019, Humana removed CDC from its network of approved dental practices, purportedly for cause. Such removal was purportedly based upon alleged professional infractions.

14. Mr. Ware has been a long-time patient of Orrington's. Mr. Ware had developed periodontal disease. Consistent with the prevailing standard of care, CDC performed a periodontal protocol and removed several of Mr. Ware's teeth. Orrington then proceeded to provide Mr. Ware with a partial denture to replace the teeth that had been removed.

15. Mr. Ware was taking longer than expected to heal from this procedure. During a telephone call between Orrington and Humana on June 10, 2019, Humana recommended to Orrington that Mr. Ware have his remaining upper teeth removed so that a denture could be inserted.

16. Mr. Ware did not wish to have additional teeth removed and did not want a full set of dentures. Humana, however, was refusing to pay for the dental work that had taken place unless Mr. Ware's remaining teeth were pulled and a full set of dentures inserted.

17. Orrington explained to Humana that such recommendations by a third-party payor such as Humana are improper. Nonetheless, in light of the financial leverage improperly applied by Humana, Mr. Ware agreed to having his remaining upper teeth pulled and an upper denture inserted.

18. Separately, in or around mid-2019, Orrington received a call from Humana wherein Humana was critical of CDC's scaling and root planning procedures. Orrington explained to Humana the different patient demographics between patients located in the area where Orrington's practice is located and other, higher income, areas. Orrington also explained to Humana how these

differences impact patient treatment in the dental field. Generally, Orrington's patients require more comprehensive treatment because the food options available to them are more injurious to the patients' teeth.

19. On October 7, 2019, Humana rescinded the above-referenced termination.

20. On December 16, 2019, Humana communicated to Orrington that they were terminating CDC from their network without cause. (*See* Ex. A).

21. In 2020 (a specific date has not been provided to Orrington), Humana contacted IDPFR, which organization constitutes a regulatory body within the State of Illinois that oversees the practice of dentistry. Humana filed a complaint with IDPFR regarding certain aspects of CDC's practices. Humana has refused to provide Orrington with a copy of the complaint and Orrington has not otherwise been able to obtain a copy of the complaint despite Orrington's requests for a copy of the complaint to Humana and IDPFR.

22. On May 6, 2021, Orrington received a communication from IDPFR providing notice that it would be holding a hearing on June 9, 2021, with respect to "allegations of misconduct…." In this communication, IDPFR invited Orrington to retain counsel to represent Orrington in connection with the proceedings if Orrington so chose.

23. On June 9, 2021, the above-referenced hearing before IDPFR was held.

24. No further action has been taken by IDPFR to date.

25. Both the June 10, 2019, call between Orrington and Humana regarding Mr. Ware, as well as the subsequent communication between the Parties regarding scaling and root planing procedures, were acrimonious communications. The acrimonious nature of these conversations resulted from the fact that Humana was attempting to direct Orrington's performance of

professional duties (i.e., the rendering of dentistry services) and were threatening to withhold payment for CDC's services if their directives were not adhered to.

26. It is clear to Orrington that Humana's initial termination of Orrington from their network that was later rescinded, Humana's subsequent termination of Orrington without cause, and Humana's filing of a complaint with IDPFR constituted retaliatory actions motivated by Humana's desire to cause Orrington financial and reputational injury.

27. Humana has not communicated to Orrington the grounds for Humana's complaint to IDPFR and refuses to provide Orrington with a copy of the complaint.

28. Humana's complaint to IDPFR regarding Orrington is necessarily factually baseless because Orrington has at all times adhered to proper and ethical practices.

29. Humana's complaint to IDPFR regarding Orrington was necessarily factually baseless because Orrington's rendering of dentistry services has at all times including with respect to the matters discussed herein been highly competent.

30. Orrington's treatment of Mr. Ware was highly competent and in accordance with all applicable standards of care.

31. Mr. Ware has not expressed any dissatisfaction in the treatment that he received.

32. Neither Mr. Ware, nor any other patient of Orrington, has alleged that Orrington has engaged in misconduct.

33. Humana's complaint against Orrington filed with IDPFR was prompted by retaliatory and malicious motivations because of at least the acrimonious communications between Orrington and IDPFR discussed above.

34. As a result of Humana's complaint to IDPFR regarding Orrington, Orrington's professional liability insurance carrier, Medical Protective, has terminated Orrington's insurance coverage.

35. As a result of Humana's complaint to IDPFR regarding Orrington, the price quotes that Orrington has received from alternative professional liability insurance carriers for premiums for replacement insurance coverage have been thousands of dollars higher per year than the premiums Orrington had been paying to Medical Protective.

36. As a result of Humana's complaint to IDPFR regarding Orrington, Orrington has had to pay for an extension of the period during which Orrington may report claims under the insurance policy that Orrington previously had with Medical Protective.

37. As a result of Humana's complaint to IDPFR regarding Orrington, Orrington has had to pay to retain counsel to represent them in connection with defense of the IDPFR proceedings. The legal expenses for such representation have accumulated substantially and promise to continue to accumulate as the proceedings progress.

## COUNT I: COMMON LAW DEFAMATION PER QUOD

38. Orrington repeats and incorporates herein by reference each of the allegations set forth above as if fully set forth here.

39. Upon information and belief, Humana has made factually false statements to IDPFR concerning alleged misconduct on the part of Orrington.

40. Humana's making of such false factual statements to IDPFR constituted publication of such statements.

41. Such publication of factually false statements by Humana to IDPFR was not privileged.

42. Humana failed to conduct a reasonable investigation into the matters that were the subject of Humana's complaint to IDPFR regarding Orrington.

43. Humana's unprivileged publishing to IDPFR of factually false statements concerning Orrington's practices constitutes actional defamation per se under Illinois law because it accuses Orrington of lacking ability or integrity in the performance of Orrington's professional activities and otherwise prejudices Orrington in the conduct of Orrington's business. *Solaia Tech., LLC v. Specialty Pub. Co.*, 221 Ill. 2d 558, 580 (2006).

44. Orrington has sustained substantial financial, reputational, and other injury as a result of Humana's defamatory statements. The financial injury sustained by Orrington as a result of Defendants' actions complained of herein exceeds $75,000.

45. Orrington's injuries include, *inter alia*, the substantially increased insurance expenses and the legal fees discussed above.

46. Orrington's professional standing among members of the dental profession has been significantly adversely affected by virtue of having had Humana's allegations of misconduct levelled against him.

**WHEREFORE** Orrington prays for judgment in their favor with respect to Count I and for entry of an Order awarding Orrington actual and consequential damages, punitive damages, and costs, as well as such further relief as the Court deems just, in an amount to be determined at trial but greater than $75,000.

### COUNT II: COMMON LAW DEFAMATION PER SE

47. Orrington repeats and incorporates herein by reference each of the allegations set forth above as if fully set forth here.

8

48. Humana's unprivileged publishing to IDPFR of factually false statements concerning Orrington's practices constitutes actional defamation per se under Illinois law because it accuses Orrington of lacking ability or integrity in the performance of Orrington's professional activities and otherwise prejudices Orrington in the conduct of Orrington's business. *Solaia Tech., LLC v. Specialty Pub. Co.*, 221 Ill. 2d 558, 580 (2006).

**WHEREFORE** Orrington prays for judgment in their favor with respect to Count II and for entry of an Order awarding Orrington actual and consequential damages, punitive damages, and costs, as well as such further relief as the Court deems just, in an amount to be determined at trial but greater than $75,000.

### COUNT III: COMMON LAW COMMERCIAL DISPARAGEMENT

49. Orrington repeats and incorporates herein by reference each of the allegations set forth above as if fully set forth here.

50. Humana's statements discussed herein to IDPFR regarding Orrington constitute false and demeaning statements.

51. The attack on Dr. Orrington's personal integrity and on Orrington's professional ethics inherent in Humana's baseless filing of a complaint with IDPFR alleging misconduct is highly intertwined with Orrington's rendering of dentistry services and Dr. Orrington's operation of CDC. *Allcare, Inc. v. Bork*, 176 Ill.App.3d 993, 1000 (1st Dist. 1988) (discussing that, for certain service industries, there may be overlap between defamation and commercial disparagement); *see also Freiburger v. Timmerman*, No. 13 CV 8174, 2016 WL 4493448, at *15 (N.D. Ill. Aug. 26, 2016) (false statements indicating that plaintiffs' "business practices were substandard, negligent or harmful" may be actionable under commercial disparagement).

52. Orrington has sustained financial and other injury of the nature identified above as a result of Humana's disparagement of Orrington to IDPFR. The financial injury sustained by Orrington as a result of Defendants' actions complained of herein exceeds $75,000.

**WHEREFORE** Orrington prays for judgment in their favor with respect to Count III and for entry of an Order awarding Orrington actual and consequential damages, punitive damages, and costs, as well as such further relief as the Court deems just, in an amount to be determined at trial but greater than $75,000.

## COUNT IV: COMMON LAW ABUSE OF PROCESS

53. Orrington repeats and incorporates herein by reference each of the allegations set forth above as if fully set forth here.

54. In filing a baseless complaint against Orrington with IDPFR, Humana acted with an ulterior motive and purpose. Humana's filing of said complaint was undertaken for the purpose of inflicting injury to Orrington's professional reputation and to inflict financial injury to Orrington.

55. Humana knew that Orrington would be required to disclose the IDPFR matter to Orrington's professional liability insurance carrier. Humana knew that there was a high probability that such disclosure might result in discontinuation of coverage and/or in Orrington having to pay significantly higher insurance premiums.

56. The filing of the complaint by Humana and the pendency of the case before IDPFR has resulted in the termination of Orrington's professional liability insurance coverage by insurance carrier Medical Protective. Orrington has had to purchase an extension of the period of reporting claims under the prior insurance policy that Medical Protective had provided. Orrington has had to pay thousands of dollars for this extension period.

57. Orrington is currently considering options for a new professional liability insurance policy. The quotes that Orrington has received to date are substantially higher than the cost of the premiums under Orrington's prior policy with Medical Protective.

58. Orrington is currently bearing the risk of not having professional liability insurance coverage and, based on the quotes that Orrington has received to date, if and when Orrington is able to obtain replacement insurance coverage, Orrington will have to pay substantially higher premiums than were being paid under the prior policy with Medical Protective.

59. Humana also knew that there was a high probability that having to defend the proceedings would impose a financial burden on Orrington because Orrington would need to retain counsel to help ensure that Orrington was adequately represented in connection with the proceedings. Orrington has retained counsel to represent them in connection with the IDPFR proceedings. Orrington has paid thousands of dollars for such representation and such costs will continue to mount as the proceedings continue.

60. Humana is using the proceedings before the IDPFR in a way that is not proper in the usual course of such proceedings. Humana is attempting to use the IDPFR proceedings to accomplish results that are beyond the purview of such proceedings. Humana is attempting to use the IDPFR to cause financial and reputational harm to Orrington, and to inflict emotional distress upon Dr. Orrington, by accusing Orrington, without adequate basis, of professional misconduct.

61. Orrington has sustained substantial financial, reputational, and other injury as a result of Humana's abuse of the IDPFR proceedings.

**WHEREFORE** Orrington prays for judgment in their favor with respect to Count IV and for entry of an Order awarding Orrington actual and consequential damages, punitive damages,

and costs, as well as such further relief as the Court deems just, in an amount to be determined at trial but greater than $75,000.

## COUNT V: COMMON LAW INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

62. Orrington repeats and incorporates herein by reference each of the allegations set forth above as if fully set forth here.

63. Humana's actions in filing a baseless complaint against Orrington with the IDPFR alleging improprieties, failing to conduct a reasonable investigation into the matter prior to contacting IDPFR, not raising the matter with Orrington in any way prior to filing said complaint, and, since filing the complaint, refusing to provide Orrington with a copy of the complaint, constitutes extreme and outrageous conduct intended to injure Orrington professionally and financially.

64. Humana intended that their conduct inflict severe emotional distress on Dr. Orrington.

65. Humana knew that there was a high probability that their conduct would inflict severe emotional distress on Dr. Orrington.

66. Humana's conduct as complained of herein has caused Dr. Orrington severe emotional distress. Dr. Orrington relies upon his dentistry practice to financially support himself and his family. CDC is Dr. Orrington's primary source of income for himself and his family. Without adequate professional liability insurance coverage, Dr. Orrington will be effectively prevented from practicing dentistry. The premium quotes that Dr. Orrington has received since Medical Protective terminated their relationship with CDC are on the magnitude of ten times more expensive than the premiums that CDC had been paying with Medical Protective.

**WHEREFORE** Orrington prays for judgment in their favor with respect to Count V and for entry of an Order awarding Orrington actual and consequential damages, punitive damages, and costs, as well as such further relief as the Court deems just, in an amount to be determined at trial but greater than $75,000.

## **DEMAND FOR JURY TRIAL**

Orrington hereby demands a jury trial on all issues triable as of right to a jury. Fed. R. Civ. P. 38(b).

Date:   February 4, 2022

    Respectfully submitted,

    /s/ Theodore J. Chiacchio

    Theodore J. Chiacchio (Bar No. 6332547)
    **CHIACCHIO LAW OFFICES**
    307 North Michigan Avenue, Suite 2011
    Chicago, Illinois 60601
    Tel: (312) 815-2384

    *Counsel for Plaintiffs*