**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **JAMES L. ORRINGTON, II and,**<br>**JAMES L. ORRINGTON, II D.D.S., P.C.,**<br><br>　　　　**Plaintiffs,**<br>　　**v.**<br><br>**HUMANA DENTAL INSURANCE**<br>**COMPANY and HUMANA INC.,**<br><br>　　　　**Defendants.** | **Case No. 22-cv-645**<br><br>**Judge Jorge L. Alonso** |

**<u>MEMORANDUM OPINION AND ORDER</u>**

　　Plaintiffs James L. Orrington, II ("Orrington") and James L. Orrington, II D.D.S., P.C. ("Chatham Dental Care") (together, "Plaintiffs") bring a five-count complaint against Defendant Humana Dental Insurance Company ("HDIC") and Defendant Humana Inc. ("Humana") (together, "Defendants") for defamation *per quod*, defamation *per se*, commercial disparagement, abuse of process, and intentional infliction of emotional distress. Plaintiffs' claims stem from Defendants' purportedly baseless complaint against Plaintiffs with the Illinois Department of Financial and Professional Regulation ("IDFPR") alleging substandard patient care and improper billing practices. Defendants move to dismiss all counts for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the Court grants Defendants' motion in part and denies Defendants' motion in part.

1

## I.    Background[1]

Orrington owns and operates Chatham Dental Care, a dental practice in the City of Chicago. At some point in early to mid-2019, Plaintiffs were in Defendants' "network of approved dental practices." (2d Am. Compl. ¶ 14, ECF No. 9.) Two acrimonious telephone calls that took place between Plaintiffs and Defendants around mid-2019 began the chain of events that led to this lawsuit.

The first telephone call concerned a long-time patient of Plaintiffs', Reverend Jessie Ware, who had periodontal disease. Sometime in mid-2019, Plaintiffs performed a "periodontal protocol" consistent with the prevailing standard of care that removed several of Mr. Ware's teeth. (*Id.* ¶ 15.) Plaintiffs provided Mr. Ware with a partial denture to replace the teeth that had been removed.

Mr. Ware took longer than expected to heal from the procedure. On a June 10, 2019, call between Orrington and Defendants, Defendants recommended that Mr. Ware have his remaining upper teeth removed so that a denture could be inserted. Orrington explained to Defendants that such recommendations "by a third-party payor" were improper. (*Id.* ¶ 18.) Although Mr. Ware did not wish to have additional teeth removed or a full set of dentures, Defendants refused to pay for the dental work that had already taken place unless Mr. Ware's remaining teeth were pulled.

---

1 Most facts in the "Background" section come from Plaintiffs' operative complaint (ECF No. 9), and the Court assumes Plaintiffs' factual allegations are true for purposes of this motion to dismiss. *See United Cent. Bank v. Davenport Estate LLC*, 815 F.3d 315, 318 (7th Cir. 2016). Further, the Court considers "not only 'the complaint itself,' but also 'documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice'" as well as "additional facts set forth in [briefing], so long as those facts are 'consistent with the pleadings.'" *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013) (citations omitted). "To the extent that an exhibit attached to or referenced by the complaint contradicts the complaint's allegations, the exhibit takes precedence." *Id.* (citation omitted).

Mr. Ware ultimately acquiesced "in light of the financial leverage improperly applied" by Defendants. (*Id*. ¶ 18.)

The second call similarly took place sometime around mid-2019. Orrington received a call from Defendants during which Defendants were critical of Plaintiffs' scaling and root planning procedures. Orrington explained to Defendants the different patient demographics between patients located in the area where Chatham Dental Care is located and other, higher income areas. Orrington further explained how these differences impact patient treatment, and that their patients required more comprehensive treatment because the food options available to them are more injurious to patients' teeth. Plaintiffs again allege that Defendants were "attempting to direct" Plaintiffs' rendering of dentistry services and were "threatening to withhold payment" if their directives were not followed. (*Id*. ¶ 26.)

In August 2019, Defendants removed Chatham Dental Care from its network of approved dental practices "for cause" based upon "alleged professional infractions" during Chatham Dental Care's provision of dentistry services to Mr. Ware. (*Id*. ¶ 14.) Plaintiffs appealed, and on October 7, 2019, Defendants rescinded that decision. But then on December 16, 2019, Defendants informed Plaintiffs that they were exercising their contractual right to terminate Chatham Dental Care from their network "without cause." (*Id*. ¶ 21; *id*. Ex. A.)

Sometime in 2020 (a specific date has not been provided to Plaintiffs), Defendants contacted IDFPR, a "regulatory body within the State of Illinois that oversees the practice of dentistry." (*Id*. ¶ 22.) Specifically, Defendants filed a complaint with IDFPR regarding Plaintiffs' substandard billing and patient care. Plaintiffs allege that Defendants failed to conduct a reasonable investigation into the matter, and to raise the matter with Plaintiffs in any way, before

contacting IDFPR. Plaintiffs have no further information regarding the complaint because despite Plaintiffs' requests, neither Defendants nor IDFPR have provided Plaintiffs with a copy.

On May 6, 2021, Plaintiffs received a notice from IDFPR that it would be holding a hearing on June 9, 2021, concerning "'allegations of misconduct resulting in [Plaintiffs'] termination from all Human[a] lines of business.'" (*Id*. ¶ 23.) IDFPR invited Plaintiffs to retain counsel to represent them at the proceedings. An email message from IDFPR to Plaintiffs' counsel stated that its May 2021 notice "referred to" the "December 2019 termination" and that it has "evidence from Humana of substandard patient care, billing, etc. regarding several patients[.]" (Resp. at 6, ECF No. 19.)[2] The hearing was held on June 9, 2021.[3] IDFPR has taken no further action.

Plaintiffs allege that their treatment of Mr. Ware was "in accordance with all applicable standards of care" and that Defendants' complaint to IDFPR was baseless because Plaintiffs have "at all times adhered to proper and ethical billing practices" and their dentistry services have always "been highly competent." (2d Am. Compl. ¶¶ 29-31, ECF No. 9.) Mr. Ware has never expressed any dissatisfaction with the treatment he received, and no patients have ever complained of improper billing practices or other misconduct. (*Id*. ¶¶ 32-33.)

---

2 "[A] party opposing a Rule 12(b)(6) motion may submit materials outside the pleadings to illustrate the facts the party expects to be able to prove" without converting the motion into a Rule 56 motion for summary judgment. *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n. 1 (7th Cir. 2012). The court will consider additional facts set forth in briefing so long as those facts "are consistent with the pleadings." *Phillips*, 714 F.3d at 1019–20.

3 In Plaintiffs' response memorandum to the instant motion, they state that the hearing was not in fact held as planned and that the inaccurate allegation was a result of a miscommunication between Plaintiffs and Plaintiffs' counsel. (Resp. at 5, ECF No. 19.) However, the Court will only consider additional facts set forth in the briefing if they are consistent with the complaint. *Phillips*, 714 F.3d at 1019–20. Nonetheless, even if the Court assumed as true that the hearing was not held, the Court's decisions set forth in this Opinion would not change for the reasons explained in the "Discussion" section below.

Plaintiffs filed this lawsuit on February 4, 2022, alleging that Defendants' initial termination "for cause," subsequent termination "without cause," and complaint with the IDFPR were in retaliation for the two "acrimonious" calls in mid-2019. (*Id*. ¶¶ 26-27.) Plaintiffs assert that Defendants' factually false statements to IDFPR alleging Plaintiffs' misconduct in billing matters and patient care constitutes defamation *per quod* and *per se*, as well as commercial disparagement. Further, Plaintiffs assert that Defendants' baseless complaint with the IDFPR was an abuse of process and was intended to inflict emotional distress. Finally, Plaintiffs allege that as a result of Defendants' complaint to IDFPR: Plaintiffs' professional liability carrier, Medical Protective, terminated coverage; price quotes from alternative professional liability insurance carriers have been ten times more expensive per year than what Plaintiffs previously paid; Plaintiffs have had to pay for an extension of the period to report claims under their prior policy with Medical Protective; and Plaintiffs had to pay to retain legal counsel to represent them in defense of the IDFPR proceedings.

Jurisdiction is proper over this action because the amount in controversy exceeds $75,000 and the parties are completely diverse. 28 U.S.C. §§ 1332(a)(1). Plaintiffs are citizens of Illinois. (*Id*. ¶¶ 1-2.) Defendant HDIC is a citizen of Wisconsin, and Defendant Humana is a citizen of Delaware and Kentucky. (*Id*. ¶¶ 3-4.)

## II.    Legal Standard

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and alteration marks omitted). Under federal notice-pleading standards, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* Stated differently, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S.at 556). All reasonable inferences must be drawn in favor of the non-moving party. *Vesuvius USA Corp. v. Am. Com. Lines LLC*, 910 F.3d 331, 333 (7th Cir. 2018). "In reviewing the sufficiency of a complaint under the plausibility standard, [courts must] accept the well-pleaded facts in the complaint as true, but [they] 'need[] not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665-66 (7th Cir. 2013) (quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)).

## III.  Discussion

Defendants move to dismiss all five counts of Plaintiffs' complaint, arguing that Plaintiffs fail to state claims upon which relief can be granted. The parties agree that Illinois law applies. The Court addresses each count in turn.

### A.  Defamation *Per Quod* and Defamation *Per Se* (Counts I and II)

Defendants make two arguments for dismissal of Plaintiffs' defamation claims: failure to allege a false statement and that Defendants' statements to the IDFPR are absolutely privileged.

### 1. False Statement

Defendants first argue that Plaintiffs fail to plead one key element of a defamation claim: that Defendants made a false statement about Plaintiffs. Defendants contend that Plaintiffs must specifically allege what false statements were made and when but fail to do so.

To state a claim for defamation under Illinois law, a plaintiff must allege that "'the defendant made a false statement about the plaintiff, that the defendant made an unprivileged publication of that statement to a third party, and that [the] publication caused damages.'" *Bd. of Forensic Doc. Exam'rs, Inc. v. Am. Bar Ass'n*, 922 F.3d 827, 831 (7th Cir. 2019) (quoting *Green v. Rogers*, 917 N.E.2d 450 (Ill. 2009)). Defamation *per quod* "requires a plaintiff to show that the false statements caused him harm[,]" while defamation *per se* "expose[s] the subject to such great obloquy that they are actionable without proof of injury." *Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 613 (7th Cir. 2013). Defendants do not argue that Plaintiffs fail to allege publication or damages.

There are five categories of statements that are considered defamatory *per se* in Illinois, including two that are relevant here—"statements 'imputing an inability to perform or want of integrity in the discharge of duties of office or employment' and statements that 'prejudice a party, or impute lack of ability, in his or her trade.'" *Bd. of Forensic Doc. Exam'rs*, 922 F.3d at 832 (quoting *Van Horne v. Muller*, 705 N.E.2d 898 (Ill. 1998)).[4] Claims for defamation *per se* raised in federal court are not subject to the heightened pleading standard set by Federal Rule of Civil Procedure 9(b). *Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 926 (7th Cir. 2003); *see also Marshall v. Vill. of Island Lake, Illinois*, No. 18 C 8305, 2019 WL 3801863, at

---

4 The other three categories are: words that impute a person has committed a crime; words that impute a person is infected with a loathsome communicable disease; and words that impute a person has engaged in adultery or fornication. *Van Horne,* 705 N.E.2d at 903.

*6 (N.D. Ill. Aug. 13, 2019) ("In the context of a defamation claim, Rule 8 'does not require that the complaint recite verbatim the allegedly defamatory statement.'" (citation omitted)).

Plaintiffs allege that Defendants made factually false statements to IDFPR alleging Plaintiffs' substandard patient care and billing when Defendants filed a complaint with IDFPR sometime in 2020. Plaintiffs further allege the statements were false because: Plaintiffs have always adhered to proper and ethical billing practices; Plaintiffs have never received any patient complaints about their billing practices; Defendants rescinded their "for cause" termination and only terminated Plaintiffs from their network "without cause;" and Defendants conducted no investigation of the matter before contacting IDFPR. Plaintiffs' allegations go beyond the mere recital of a legal element and state sufficient facts to allege that Defendants made a false statement about them to the IDFPR in 2020. Further, the allegedly false statements impute a "want of integrity in the discharge of duties of office or employment" and a "lack of ability" in Plaintiffs' trade—dentistry.

The two district court cases cited by Defendants are distinguishable. In *Esparza v. S.R. Barnum, Inc.*, No. 19-CV-06231, 2021 WL 1784755, at *2 (N.D. Ill. May 5, 2021), the complaint merely alleged that defendant "'made false statements' to various people" but did not allege "at all what these false statements were or when they were made." *Id*. Consequently, the defamation claim "fail[ed] to put defendant on notice of the statements plaintiff is complaining about and is purely speculative." *Id*. Here, by contrast, Defendants are on notice of the statements Plaintiffs are complaining about—Defendants' 2020 complaint to the IDFPR regarding Plaintiffs' misconduct in billing practices and substandard patient care.

In *Mitchell v. Plano Police Dep't*, No. 16-CV-07227, 2017 WL 4340118, *6 (N.D. Ill. Sept. 29, 2017), the plaintiff alleged defendants defamed her by making false statements in

police reports, affidavits, and applications for arrest warrants. In addition to finding that she failed to identify any particular statement, the court found that plaintiff failed to allege facts suggesting any statement was false. *Id*. News of her arrests and criminal charges published in the local papers were factually true because her own complaint alleged that she was arrested and charged many times. *Id*. Here, Plaintiffs adequately allege that the allegations in Defendants' 2020 complaint to the IDFPR were false.

Accordingly, the Court will not dismiss Plaintiffs' defamation claims on this basis.

## 2. Absolute Privilege

The Court's inquiry regarding Plaintiffs' defamation claims does not end there, however. Defendants also argue that Defendants' alleged statements to the IDFPR are protected by an absolute privilege, which extends to reports to administrative agencies such as the IDFPR that act in a judicial or quasi-judicial capacity. The Court agrees.

"'As a matter of public policy, certain types of defamatory statements are deemed privileged so that the person making the statement will not be deterred from speaking by the threat of civil liability.'" *Kalish v. Illinois Educ. Ass'n*, 510 N.E.2d 1103, 1105 n.1 (Ill. App. Ct. 1987) (citation omitted). "Whether a defamatory statement is protected by an absolute or a qualified, or conditional, privilege is a question of law for the court." *Layne v. Builders Plumbing Supply Co.*, 569 N.E.2d 1104, 1106 (Ill. App. Ct. 1991) (citation omitted). "The privilege embraces actions required or permitted by law in the course of judicial or quasi-judicial proceedings as well as actions 'necessarily preliminary' to judicial or quasi-judicial proceedings." *Id*. (citation omitted).

"Whether any given proceeding by an administrative body is quasi-judicial depends upon the powers and duties of the body conducting the proceeding and upon the nature of the

proceeding." *Parrillo, Weiss & Moss v. Cashion*, 537 N.E.2d 851, 854 (Ill. App. Ct. 1989) (citations omitted). Illinois courts examine six factors to determine whether an administrative agency is a quasi-judicial body: "(1) the power to exercise judgment and discretion; (2) the power to hear and determine or to ascertain facts and decide; (3) the power to make binding orders and judgments; (4) the power to affect the personal or property rights of private persons; (5) the power to examine witnesses, to compel the attendance of witnesses, and to hear the litigation of issues on a hearing; and (6) the power to enforce decisions or impose penalties." *Id*. at 854-55 (citations omitted). While an agency need not possess all six, "the more powers it possesses the more likely the body is acting in a quasi-judicial manner." *Id*. at 855 (citations omitted).

The Court finds that the IDFPR is a quasi-judicial body. The IDFPR has the power and duty to, among other things, exercise judgment and discretion in granting licenses for certain professions, including dentistry. 20 ILCS 2105/2105-15(a)(3); 225 ILCS 25/1, *et seq*. It is obligated to "investigate the actions" of a licensee "upon the verified complaint of any person, provided the complaint or the complaint together with evidence, documentary or otherwise, presented in connection with the complaint makes a prima facie case." 20 ILCS 2105/2105-100(b). It may "conduct hearings on proceedings to revoke, suspend, refuse to renew, place on probationary status, or take other disciplinary action" regarding those licenses. 20 ILCS 2105/2105-15(a)(5). During such hearings licensees must be given "ample opportunity to present, in person or by counsel, testimony, evidence, and argument that may be pertinent to the charges or to any defense to the charges." 20 ILCS 2105/2105-100(d).

The IDFPR has the authority during its investigations or hearings to "to administer oaths, subpoena witnesses, take evidence, and compel the production of any books, papers, records, or

any other documents that the Director, or a person designated by him or her, deems relevant or material." 20 ILCS 2105/2105-105(a). It may "initiate criminal proceedings" to "seek enforcement of any such subpoena." 20 ILCS 2105/2105-105(b). Following disciplinary proceedings, the IDFPR may find a violation of the relevant licensing act and determine the "appropriate disciplinary sanction to be imposed," considering "only evidence contained in the record including any "aggravating or mitigating factors." 20 ILCS 2105/2105-130(a). It may "revoke, suspend, refuse to renew, place on probationary status, fine, or take any other disciplinary action as authorized in the licensing Act" with respect to a professional license. 20 ILCS 2105/2105-130(a).

Plainly, the IDFPR has all six factors of a quasi-judicial body under Illinois law. This finding is supported by other cases within this district. One court found that the IDFPR is a quasi-judicial body because it "possesses powers including the ability to conduct hearings on proceedings to revoke suspend, renew, place on probation or take other disciplinary action authorized in any licensing Act administered by the Department." *Quiroz v. Hartgrove Hosp.*, No. 97 C 6515, 1999 WL 281343, at *19 (N.D. Ill. Mar. 25, 1999). The court held that the nurse-plaintiff's statements to IDFPR investigators regarding sexual harassment by the defendant psychiatrist were absolutely privileged. *Id*; *see also Balsamo v. Schicht*, No. 21 C 6672, 2022 WL 4273145, at *3 (N.D. Ill. Sept. 15, 2022) (false complaint to IDFPR of sexual and professional misconduct by psychotherapist was absolutely privileged, where parties agreed the IDFPR is a quasi-judicial body).

Plaintiffs in this case do not purport to dispute that the IDFPR is a quasi-judicial body. Rather, Plaintiffs argue that absolute privilege only applies to testimony and communications to administrative agencies when they are performing a judicial function. Plaintiffs argue that

IDFPR has not conducted any proceedings to date, nor even commenced a formal investigation, and so the circumstances dictate that qualified privilege is the more appropriate standard to apply to initial complaints to the IDFPR.[5]

Plaintiffs' position on its face is not without basis in the law. When an entity with quasi-judicial powers "is not performing its quasi-judicial functions, or at those times when, purporting to perform those functions, it nevertheless fails to follow judicial procedures, it can be said that it is not acting as a quasi-judicial body." *Parrillo*, 537 N.E.2d at 854 (citation omitted).

Here, however, Defendants' statements in its 2020 complaint to the IDFPR regarding Plaintiffs' misconduct in billing practices and patient care constitutes a preliminary step to a quasi-judicial proceeding—an investigation into a professional licensee and, if necessary, disciplinary hearing by the IDFPR—and thus are absolutely privileged. Regardless of whether an informal conference or disciplinary hearing has actually taken place to date, those facts do not change the nature of the 2020 complaint as the first step in such proceedings. Nor would it make any difference whether Defendants made the 2020 complaint in retaliation for the two acrimonious telephone calls. *Mauvais-Jarvis v. Wong*, 987 N.E.2d 864, 881 (Ill. App. Ct. 2013) ("Where absolute privilege is granted, no cause of action for defamation lies against the person making the statement even if it is made with malice." (citations omitted)); *Kalish*, 510 N.E.2d at 1105 n.1 (same).

Illinois courts have applied absolute privilege to analogous preliminary steps integral to an administrative agency's quasi-judicial functions. *See, e.g.*, *Parrillo,* 537 N.E.2d at 856 (holding that the Illinois Department of Insurance is a quasi-judicial body and that defendant's

---

5 The Court's conclusion that Defendants' 2020 complaint to the IDFPR is absolutely privileged does not change regardless of whether it considers Plaintiffs' apparently incorrect allegation that a hearing was held on June 9, 2021, *supra* n. 3, for the reasons explained below.

letter to the Director requesting an investigation of a certain insurance company because of the number of lawsuits pending against that company was "a preliminary step to a quasi-judicial proceeding" and thus absolutely privileged); *Lykowski v. Bergman*, 700 N.E.2d 1064, 1071 (Ill. App. Ct. 1998) (finding statements in letter to the Attorney Registration and Disciplinary Commission regarding attorney misconduct, "no matter how false or outrageous," were absolutely privileged); *Kalish*, 510 N.E.2d at 1110 ("The defamatory statements attributed to defendants were made in response to the Character and Fitness Committee's inquiry into plaintiff's 'moral character, reputation and fitness for the practice of law.' That inquiry was an integral part of the Committee's responsibility to determine fitness, which is a quasi-judicial function."); *Thomas v. Petrulis*, 465 N.E.2d 1059, 1060 (Ill. App. Ct. 1984) (finding statements in defendant's formal written charge with the EEOC alleging sexual harassment and discrimination were absolutely privileged).

The cases relied upon by Plaintiffs applying Illinois law are distinguishable. In *Auriemma v. Montgomery*, 860 F.2d 273, 280 (7th Cir. 1988) the court held that actions taken by government attorneys in preparing their clients' defense (hiring investigative consultants to obtain credit reports on plaintiffs through the use of false pretenses) were "sufficiently removed from the judicial process that the government defense attorneys should not be entitled to any greater protection than the qualified immunity to which executive officials are normally entitled." In this case, Defendants' 2020 complaint was an integral step in IDFPR's quasi-judicial functions as described above.

In *Kuwik v. Starmark Star Mktg. & Admin., Inc.*, 619 N.E.2d 129, 135 (Ill. 1993), the Illinois Supreme Court held that letters sent to the Department of Insurance were qualifiedly

privileged. However, the court did not consider whether the Department of Insurance is a quasi-judicial body or whether the letters were absolutely privileged.

In *Zych v. Tucker*, 844 N.E.2d 1004, 1009 (Ill. App. Ct. 2006), the defendant sent an allegedly defamatory letter stating reporting policy misconduct to the Office of Internal Affairs of the Cook County Sherriff's Policy Department ("OIA"). *Id*. The court found that the OIA did not possess any powers of a quasi-judicial body or that a complaint to the OIA was necessarily preliminary to a proceeding before the board charged with investigating, holding hearings on, deciding, and enforcing police disciplinary orders. *Id*.

Finally, public policy considerations weigh in favor of protecting statements in a complaint to the IDFPR, even if that complaint does not result in an informal conference or disciplinary hearing. The Illinois legislature declares that "[t]he practice of the regulated professions, trades, and occupations in Illinois . . . affect[s] the public health, safety, and welfare of the People of this State and in the public interest is subject to regulation and control by the" IDFPR. 20 ILCS 2105/2105-10. Further, it is a "matter of public interest and concern that standards of competency and stringent penalties for those who violate the public trust be established to protect the public from unauthorized or unqualified persons representing one of the regulated professions[.]" *Id*. In light of these responsibilities, people must be able to communicate freely with the IDFPR regarding complaints of professional misconduct in billing and patient care without fear of liability for defamation. *Cf. Defend v. Lascelles*, 500 N.E.2d 712, 716 (Ill. App. Ct. 1986) ("The law thus clearly allows for an absolute privilege where there exists a significant interest in protecting the type of speech involved."); *Thomas*, 465 N.E.2d at 1064 ("The policy encouraging challenges to discriminatory practices is sufficiently strong to warrant denial of protection to employers defamed in charges of discrimination filed with the EEOC.").

Accordingly, Counts I and II are dismissed without prejudice to alleging facts sufficient to state a claim.

### B.  Commercial Disparagement (Count III)

Defendants next argue that Plaintiffs' commercial disparagement claim fails because Plaintiffs fail to sufficiently allege false and demeaning statements regarding the quality of another's goods and services. The Court disagrees for the reasons set forth above with respect to Counts I and II.

The Court assumes that commercial disparagement is still a viable cause of action in Illinois. *Universal Gaming Grp. v. Taft Stettinius & Hollister LLP*, 2017 IL App (1st) 150878-U, ¶ 53. To state a claim for commercial disparagement, Plaintiffs must allege "that defendants made false and demeaning statements regarding the quality of [Plaintiffs'] goods and services." *Schivarelli v. CBS, Inc.*, 776 N.E.2d 693, 702 (Ill. App. Ct. 2002) (citation omitted). Defendants' 2020 complaint to the IDFPR alleging Plaintiffs' misconduct in billing practices and substandard patient care are allegedly false for the reasons stated above with respect to Defendants' defamation claims. Additionally, the statements "are reflections on the quality of plaintiffs' goods and services." *Freiburger v. Timmerman*, No. 13 CV 8174, 2016 WL 4493448, at *15 (N.D. Ill. Aug. 26, 2016) ("[S]tatements that [plaintiff] had conflicts of interests, did not act in his clients' best interest, and that the firm did not adhere to the requisite standard of care are reflections on the quality of plaintiffs' goods and services.").

The cases cited by Defendants are distinguishable. In *Marchese v. Dobry*, No. 00 C 5606, 2001 WL 492471, at *2 (N.D. Ill. May 9, 2001), the counter-plaintiff merely alleged that the counter-defendant "posted false and disparaging statements regarding Gary Dobry, Pug's Boxing and Fitness Center, Inc., a/k/a Pug's Gym and Dobry's educational, employment, and alleged

criminal history, all of which have adversely affected his ability to profitably conduct his business affairs as a gym operator, artist and writer." The court found that this statement was a bare legal conclusion and therefore did not put the defendant on notice of any false or demeaning statements regarding the "*quality of [plaintiff's] goods and services*." *Id*. (emphasis original). Here, by contrast, Defendants are on notice of the statements Plaintiffs are complaining about.

In *Schivarelli*, the court found that the statements in the promotional announcement at issue were not "of and concerning" the defendants because they were not mentioned therein and there was nothing to suggest that the statements had anything to do with defendants. 776 N.E.2d at 702-03. Here, the Defendants' 2020 complaint plainly concerned Plaintiffs and their dentistry services.

Defendants' motion to dismiss is denied with respect to Count III.

### C. Abuse of Process (Count IV)

Next, Defendants argue that Plaintiffs fail to allege a claim for abuse of process because they do not allege that Defendants used the court's process at all, let alone to accomplish a result beyond the purview of the process. The Court agrees.

"Abuse of process is the misuse of legal process to accomplish some purpose outside the scope of the process itself." *Neurosurgery & Spine Surgery, S.C. v. Goldman*, 790 N.E.2d 925, 929 (Ill. App. Ct. 2003) (citation omitted). "'The *only* elements necessary to plead a cause of action for abuse of process are: (1) the existence of an ulterior purpose or motive and (2) some act in the use of legal process not proper in the regular prosecution of the proceedings.'" *Bedin v. Nw. Hosp.*, 2017 IL App (1st) 151547-U, ¶ 24 (citation omitted) (emphasis original). With respect to the first element, a plaintiff "must plead facts that show the defendant instituted proceedings against him for an improper purpose, 'such as extortion, intimidation, or

embarrassment.'" *Id*. (citation omitted). As for the second element, "the plaintiff must show that the process was used to accomplish some result that is beyond the purview of the process." *Id*.

"The mere institution of proceedings, even with a malicious intent or motive, does not alone constitute abuse of process." *Id*. (citation omitted). Rather, the second element is "the gravamen of the offense." *Neurosurgery & Spine Surgery*, 790 N.E.2d at 930 (citation omitted). Illinois appellate courts define "'process' as 'any means used by the court to acquire or to exercise its jurisdiction over a person or over specific property[, . . . and so] the mere filing of pleadings [is] not 'process' because pleadings are created and filed by the litigants, whereas 'process' is issued by the court." *Bedin*, 2017 IL App (1st) 151547-U at ¶ 25; *see also Com. Bank, N.A. v. Plotkin*, 627 N.E.2d 746, 748 (Ill. App. Ct. 1994) ("'Process is issued by the court, under its official seal and must be distinguished from pleadings, which are created and filed by the litigants.'" (citation omitted)).

In this case, Plaintiffs base their abuse of process claim on Defendants' submitting an allegedly baseless 2020 complaint with IDFPR in order to inflict financial and reputational harm and emotional distress on Plaintiffs. Plaintiffs do not allege that Defendants ever obtained or misused a court order to do something they were not legally required to do. *See Slep-Tone Ent. Corp. v. Kalamata, Inc.*, 75 F. Supp. 3d 898, 909 (N.D. Ill. 2014). Even assuming Defendants instituted proceedings against Plaintiffs, and those proceedings were for an improper purpose, that alone is not sufficient to state a claim for abuse of process. Plaintiffs must also allege some "process" issued by the court, which Plaintiffs fail to do. The district court cases cited by Plaintiffs either support this result or are inapposite. *See Tricia C. v. Tri-County Special Educ. Ass'n*, 2005 U.S. Dist. LEXIS 56089, *43 (C.D. Ill. Nov. 3, 2005) (finding party's requests regarding hearing length and location, among other things, did not constitute improper use of

process); *Cignetti v. Healy*, 967 F. Supp. 10, 18 (D. Mass. 1997) (applying Massachusetts law);

*Hillside Assocs. v. Stravato*, 642 A.2d 664, 670 (R.I. 1994) (applying Rhode Island law).

Plaintiffs' Count IV is dismissed without prejudice to allege facts sufficient to state a

claim.

### D. Intentional Infliction of Emotional Distress (Count V)

Finally, Defendants argue that Plaintiffs fail to allege sufficiently extreme or outrageous

conduct by Defendants to state a claim for intentional infliction of emotional distress ("IIED").

The Court agrees.

There are three elements necessary to stating a cause of action under Illinois law for

IIED: "'First, the conduct involved must be truly extreme and outrageous. Second, the actor must

either *intend* that his conduct inflict severe emotional distress, or know that there is at least a

high probability that his conduct will cause severe emotional distress. Third, the conduct must in

fact cause *severe* emotional distress.'" *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 80 (Ill. 2003)

(emphasis original) (citation omitted); *see also Richards v. U.S. Steel*, 869 F.3d 557, 566 (7th

Cir. 2017). Defendants raise no issues with respect to the second or third elements.

Defendants' argument focuses only on the first element. "[T]o qualify as outrageous, the

nature of the defendant's conduct must be so extreme as to go beyond all possible bounds of

decency and be regarded as intolerable in a civilized community." *Feltmeier*, 798 N.E.2d at 83

(citation omitted). The Seventh Circuit cautions: "To avoid imposing liability for the rough and

tumble of unpleasant—but not law-breaking—behavior, the case law instructs that 'mere insults,

indignities, threats, annoyances, petty oppressions, or other trivialities do not amount to extreme

and outrageous conduct, nor does conduct characterized by malice or a degree of aggravation

which would entitle the plaintiff to punitive damages for another tort.'" *Richards*, 869 F.3d at

566–67 (citation and internal punctuation omitted). The Illinois Supreme Court has instructed that "the degree of power or authority which a defendant has over a plaintiff can impact upon whether that defendant's conduct is outrageous." *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988). "The more control which a defendant has over the plaintiff, the more likely that defendant's conduct will be deemed outrageous, particularly when the alleged conduct involves either a veiled or explicit threat to exercise such authority or power to plaintiff's detriment." *Id*. For example, "extreme 'bullying tactics' and other 'high pressure' methods of insurance adjusters seeking to force compromises or settlements may constitute outrageous conduct." *Eckenrode v. Life of Am. Ins. Co.*, 470 F.2d 1, 4 (7th Cir. 1972) (citations omitted).

Under Illinois law, "the determination whether alleged tortious conduct is so extreme to sustain a complaint for intentional infliction of emotional distress is a question to be resolved on a case-by-case examination of the facts asserted in the complaint." *Geist v. Martin*, 675 F.2d 859, 861 (7th Cir. 1982). A district court may dismiss an IIED claim if the alleged conduct is not sufficiently extreme and outrageous. *Cook v. Winfrey*, 141 F.3d 322, 331 (7th Cir. 1998) (listing cases).

Because the parties' arguments center on whether the mere filing of a baseless complaint with the IDFPR could be sufficiently extreme and outrageous, the Court starts there. Defendants' filing of a baseless complaint with the IDFPR would not, without more, be sufficiently extreme and outrageous conduct to state an IIED claim under Illinois law. In *Duffy v. Haberkorn*, the Illinois appellate court found that "[m]aking police reports, including ones alleged to be false does not 'constitute extreme and outrageous conduct'" and so held false reports to three law enforcement agencies were "'not beyond all possible bounds of decency.'" 2012 IL App (1st) 110841-U, ¶¶ 21-22 (citations omitted); *cf. Caulfield v. Packer Eng'g, Inc.*, 2019 IL App (2d)

170740-U, ¶ 96-97 (filing of frivolous shareholder suit was not, in itself, extreme and outrageous conduct). *But see Caulfield*, 2019 IL App (2d) 170740-U at ¶ 95 ("[D]eliberately initiating a false legal proceeding that amounts to malicious prosecution may support a claim of intentional infliction of emotional distress." (citation omitted)).

The district court cases cited by Plaintiffs, while not controlling on this Court, are distinguishable. In *Pollard v. City of Chicago*, 643 F. Supp. 1244, 1256 (N.D. Ill. 1986), the Court refused to dismiss an IIED claim that was based upon: several threatening phone calls, including threatening to kill plaintiff's wife if plaintiff did not stop reporting abuses occurring within the Chicago Department of Streets and Sanitation ("DCSS"); racially abusive treatment on the job; the filing of multiple baseless criminal complaints against plaintiff, including one that resulted in plaintiff's arrest; and plaintiff's transfer three times within the DCSS. Plaintiffs also cite to *Martin v. Finley*, 2016 U.S. Dist. LEXIS 93221, *25 (M.D. Pa. Jul. 15, 2016)—an opinion that was later withdrawn by the Court—that involved a baseless criminal complaint that resulted in a search of plaintiff's bank accounts and that was made for the purpose of extorting a financial settlement from the plaintiff. This case, in contrast to *Pollard* and *Martin*, does not involve alleged criminal complaints, criminal investigation, search, arrest, extortion, or threats of violence or racial abuse.

Plaintiffs' IIED claim is, however, based upon more than the mere filing of a complaint with the IDFPR. Assuming, at this stage, that Plaintiffs' allegations are true, Defendants attempted to direct Plaintiffs' rendering of dentistry services—including by requiring Plaintiffs to remove all of Mr. Ware's teeth despite his initial wishes—and threatened to withhold insurance payment for Chatham Dental Care's services if Defendants' directives were not followed. Defendants then terminated Plaintiffs from their network "with cause" in retaliation for

two acrimonious phone calls and with intent to cause Plaintiffs financial and reputational injury.

When Plaintiffs appealed, Defendants withdrew their termination "with cause" and exercised

their contractual right to terminate Plaintiffs from their network "without cause," again in

retaliation and with intent to cause harm. Defendants then filed a baseless complaint with the

IDFPR in retaliation and with intent to cause harm, failing to first conduct a reasonable

investigation into the matter or raise the matter with Plaintiffs. When Plaintiffs requested a copy

of the complaint, Defendants refused. As a result of Defendants' conduct, Plaintiffs are

effectively prevented from practicing dentistry due to prohibitively high professional liability

insurance premiums.

      The Court considers whether these allegations sufficiently allege that Defendants

exercised control or authority over Plaintiffs and threatened to use that control to Plaintiffs'

detriment. In *Eckenrode*, the Seventh Circuit found that an insurer can be in a position of power

to affect the interests of another, and that extreme "bullying tactics" and "high pressure" methods

of forcing compromises may constitute outrageous conduct. 470 F.2d at 4. The insured in that

case was the victim of a homicide, and the plaintiff was the insured's widow and beneficiary

under his life insurance policy. *Id*. Although the plaintiff met all conditions of the policy and

repeatedly demanded payment, the insurer refused to pay, leaving plaintiff and her children with

no money or property. *Id*. The Seventh Circuit reversed the district court's dismissal of the

plaintiff's IIED claim, finding that "alleged bad faith refusal to make payment on the policy,

coupled with its deliberate use of 'economic coercion' (*i.e.*, by delaying and refusing payment it

increased plaintiff's financial distress thereby coercing her to compromise and settle) to force a

settlement, clearly rises to the level of 'outrageous conduct' to a person of 'ordinary

sensibilities.'" *Id*; *cf. Geist*, 675 F.2d at 862 (reversing district court and finding allegations that

defendant insurer's firing of plaintiff's husband as retaliation against plaintiff for exercising her policy rights alleged outrageous conduct). The *Eckenrode* court also found that the defendant life-insurer was on notice that the plaintiff would be particularly vulnerable to mental distress by the very nature of risk insured. *Eckenrode*, 470 F.2d at 4.

The Seventh Circuit later clarified that *Eckenrode*'s holding is limited to an insurance policy's insured or beneficiary. *Kush v. Am. States Ins. Co.*, 853 F.2d 1380, 1384 n. 1 (7th Cir. 1988) ("[*Eckenrode*] is inapposite for several reasons, the most important being that the plaintiff in that case was the policy's *beneficiary*. The insurer obviously owed a duty to the beneficiary and could directly and powerfully affect her interests. Kush, on the other hand, is not the policy's beneficiary, and his indirect interest as Limited's shareholder is not sufficient to support an emotional distress claim in this case." (emphasis original)).

Plaintiffs' complaint alleges that Defendants were *Mr. Ware's* insurer and were coercing *him* to agree to have his teeth pulled by threatening to withhold payment. (2d Am. Compl. ¶¶ 17-18, ECF No. 9 ("Mr. Ware did not wish to have additional teeth removed and did not want a full set of dentures. Humana, however, was refusing to pay for the dental work that had taken place unless Mr. Ware's remaining teeth were pulled and a full set of dentures insured. . . . Nonetheless, in light of the financial leverage improperly applied by Humana, Mr. Ware agreed to having his remaining upper teeth pulled and an upper denture inserted.").) What is missing is how Defendants' threats to withhold payment from Mr. Ware would affect *Plaintiffs*. Plaintiffs had performed a dental service for Mr. Ware and presumably could attempt to recover payment for those services even if they were not covered by Mr. Ware's insurance. Perhaps there was some other contractual payment agreement between Plaintiffs and Defendants—indeed, the exhibit to the complaint refers to a contractual agreement between them, but there are no further

22

allegations as to its nature or contents. The complaint is, in fact, largely silent as to the nature of the relationship between Plaintiffs and Defendants other than that Plaintiffs were at one point in Defendants' network, and the Court will not speculate.

Finally, Plaintiffs point to no authority, and the Court has not found any, suggesting that an insurance company exercising its right under a contract to terminate "without cause" a dental practice from its network, or withdrawing a prior "for cause" termination, constitutes extreme or outrageous conduct.

All of Plaintiffs' allegations together, assumed true, are troubling, but cannot be said to "be so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized community." *Feltmeier*, 798 N.E.2d at 83 (citation omitted). Because Plaintiffs fail to allege sufficiently extreme or outrageous conduct to state a claim for IIED, Count V is dismissed without prejudice to alleging facts sufficient to state a claim.

## IV.    Conclusion

For the reasons discussed, the Defendants' motion to dismiss [12] is granted in part and denied in part. Counts I, II, IV and V are dismissed without prejudice to alleging facts sufficient to state claims for which relief may be granted in an amended complaint. Defendants' motion is denied with respect to Count III. Plaintiffs are granted 28 days in which to file an amended complaint if they so choose. If they do not, Counts I, II, IV and V will be dismissed with prejudice.

**SO ORDERED.**                                        **ENTERED: March 22, 2023**

_____
**HON. JORGE ALONSO**
**United States District Judge**